IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES XUEYUAN ZHU and | § | |
| ANGELA S. CHIOU, | § | |
|     Plaintiffs, | § | |
| v. | § | Civil Action No. 3:22-CV-00239-L-BH |
| | § | |
| UBS FINANCIAL SERVICES and | § | |
| UBS SECURITIES LLC, | § | |
|     Defendants. | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation is *Defendants' Motion to Dismiss and Brief in Support*, filed March 24, 2022 (doc. 10). Based on the relevant filings and applicable law, the motion to dismiss for lack of personal jurisdiction should be **GRANTED**.

## I. BACKGROUND

On February 1, 2022, James Xueyuan Zhu and Angela S. Chiou (Plaintiffs), a married residing in Texas, filed this *pro se* suit against UBS Financial Services (UBS-FS) and UBS Securities LLC (UBS-S) (collectively Defendants). (*See* doc. 3.) The amended complaint alleges that UBS-FS is located in New York, New York and UBS-S is located in Stamford, Connecticut, and that they are wholly owned subsidiaries of Switzerland-based bank, UBS A.G. (UBS). (doc. 6 at 2, 4.)[2]

Since May 2019, Plaintiffs had invested $859,840 in Exchange Traded Notes (ETN) allegedly issued by UBS-FS,[3] which had an average share value between $11 and $13. (*Id.* at 2.)

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3] Defendants claim that UBS issued the ETNs. (doc. 10 at 7.)

The ETNs are publicly-traded securities linked to an index of real estate investment trust securities. (*Id.* at 2-3.) The Prospectus, which contains the terms of the ETNs, provides that "[p]ayment at maturity or call, upon or upon early redemption will be subject to the creditworthiness of UBS," and that "the actual and perceived creditworthiness of UBS will affect the market value, if any, of the Securities prior to maturity, call, or early redemption." (*Id.* at 3, 11.) It includes the following acceleration provision: "If, at any time, the indicative value for any series of the Securities on any Trading Day [ ] equals $5.00 or less . . . all issued and outstanding Securities of that series will be automatically accelerated and mandatorily redeemed by UBS . . . for a cash payment equal to the Acceleration Amount." (*Id.* at 3, 12.) UBS-S is identified as the "Calculation Agent," and is responsible for determining the payment of the ETNs at maturity. (*Id.* at 4, 13.)

On March 17, 2020, UBS announced that all its ETNs would be mandatorily redeemed in accordance with the acceleration provision, and "most of [Plaintiffs'] shares were forcibly redeemed at the least share value of $0.21, which caused a total principal loss of $755,998." (*Id.* at 4-5.) Plaintiffs allege that "the 'Mandatory Redemption' exercised by UBS is not based on any of 'the actual and perceived creditworthiness of UBS'," and that they have the right under the Constitution to recover the amounts confiscated from their investment and retirement accounts. (*Id.* at 6.) They seek $755,998 in damages for investment losses under the redemption policy, as well as their mental and physical damages, interest, and legal fees. (*Id.* at 6.)

On March 24, 2022, Defendants moved to dismiss this action for lack of personal jurisdiction under Rule 12(b)(2), or alternatively, for failure to state a claim under Rule 12(b)(6). (doc. 10 at 6.) Plaintiffs responded on April 12, 2022, and Defendants replied on April 28, 2022. (docs. 18, 19.)

2

## II.  RULE 12(b)(2)

The exercise of personal jurisdiction over a non-resident defendant is proper when: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent as a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); see also Fed. R. Civ. P. 4(e)(1), 4(h)(1). Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the due process clause of the Fourteenth Amendment, only the federal due process inquiry need be addressed. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); Tex. Civ. Prac. & Rem. Code § 17.041 *et seq.* "Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed [itself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp.*, 253 F.3d at 867.

The "minimum contacts" prong of the analysis is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 297 (1980). There are two types of minimum contacts: those giving rise to general jurisdiction and those giving rise to specific jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). General jurisdiction exists where the nonresident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co. Ltd. v. Atlas Copso AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the nonresident has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View Co. Ltd.*, 205 F.3d at 215 (quoting *Burger King Corp.*, 471 U.S. at 472) (quotations omitted). It is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The plaintiff has the burden of establishing minimum contacts. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989).

Where, as here, no evidentiary hearing is conducted, the plaintiff need only make a prima facie showing in support of jurisdiction. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The plaintiff's uncontroverted factual allegations in the complaint must be accepted as true, and all factual disputes must be resolved in his favor. *Alpine View Co., Ltd.*, 205 F.3d at 215; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Courts are not required "to credit conclusory allegations, even if uncontroverted," however. *Panda Brandywine Corp.*, 253 F.3d at 869. Further, "[t]he district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a prima facie case for jurisdiction has been made. Rather, the district court may consider the contents of the records at the time of the motion . . . ." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Paz v.*

4

*Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).

A. **General Jurisdiction**

As noted, a court may assert general jurisdiction over a nonresident defendant when its contacts are substantial, continuous, and systematic. *Central Freight Lines Inc.*, 322 F.3d at 381 (citing *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414). As reaffirmed by the Supreme Court, these contacts must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011); *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). The Fifth Circuit has "consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston v. Multidata Sys. Int'l. Corp.*, 523 F.3d 602, 610-11 (5th Cir. 2008). In determining whether general jurisdiction exists, courts do not examine a nonresident's contacts with the forum state in isolation from one another but rather "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986). "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required . . . . [V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Sangha*, 882 F.3d at 102 (5th Cir. 2018) (quoting *Johnston*, 523 F.3d at 609-10).

Here, the amended complaint alleges that Defendants have offices in New York and Connecticut. (doc. 6 at 2, 4.) Plaintiffs generally argue that Defendants are subject to general jurisdiction in Texas because they have "enormous interests in the State of Texas, and distribute[]

[their] products throughout the country without geographic prejudices." (doc. 18 at 1.)[4] They do not provide any facts or evidence in support of these conclusory allegations, however. *See Panda Brandywine Corp.*, 253 F.3d at 869. Moreover, the Fifth Circuit has made clear that "[i]t is not enough a corporation do business *with* Texas" to confer general jurisdiction; rather, it "must have a business presence *in* Texas." *See Johnston*, 523 F.3d at 611 (emphasis original). "[T]hat [Defendants'] products flow into Texas does not create a general presence in that state." *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir. 1987); *see also Indah v. U.S. S.E.C.*, 661 F.3d 914, 923 (6th Cir. 2011) (noting that "there appears to be no authority for the proposition that a sale of stock to the general public that includes residents of the forum state constitutes 'continuous and systematic' contact with that state sufficient to confer general personal jurisdiction"); *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp.2d 411, 425-26 (E.D.Pa. 2005) ("The sale of shares of World Fuel Corp. stock to the national public through the NYSE does not constitute continuous and systematic contacts with Pennsylvania and is not sufficient to establish general personal jurisdiction over Corp. in Pennsylvania."). While Plaintiffs also note that Defendants have hired a law firm with a Dallas office to represent them (doc. 18 at 1), "the mere existence of an attorney-

---

[4] Because Plaintiffs are proceeding *pro se*, their pleadings are to be provided "a liberal construction." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012). As a general rule, claims and allegations that are not raised in the complaint, but rather raised for the first time in a response to a dispositive motion are not properly before the court. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n.3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)); *see also Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court). Nevertheless, the Fifth Circuit has held that courts should construe new allegations and theories in *pro se* responses to dispositive motions as motions to amend. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which *pro se* plaintiff first alleged that she had been willfully discriminated against should be treated as a motion to amend); *see also Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995) (per curiam) (holding that "[t]he district court should have construed [*pro se* plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it"). Accordingly, Plaintiffs' claims and allegations in their response are construed as a motion to amend, the motion is granted, and the new claims and allegations are considered.

client relationship in the forum state does not support the exercise of general jurisdiction." *DGG Grp., LLC v. Lockhart Fine Foods, LLC*, No. 1:20-CV-00330-RP, 2021 WL 308946, at *4 (W.D. Tex. Jan. 29, 2021), *adopted by* 2021 WL 4047402 (W.D. Tex. Mar. 2, 2021). Because Plaintiffs have alleged no facts showing that Defendants made any contacts with Texas—substantial, continuous, systematic, or otherwise, they have failed to make a prima facie showing of general jurisdiction against them. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 922.

**B.    Specific Jurisdiction**

Specific jurisdiction over a non-resident defendant exists when a plaintiff's claims against the defendant arise out of or relate to activities that the defendant purposefully directed at the forum state. *Burger King Corp.*, 471 U.S. at 472. The specific jurisdiction analysis "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Specific jurisdiction is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin*, 587 F.3d at 759.

Here, Plaintiffs' lawsuit against Defendants arises out of their investment in ETNs allegedly issued by UBS-FS. (*See* doc. 6.) Their amended complaint alleges that UBS-S was the Calculation Agent for the ETNs, but it "never disclosed calculation formulas, parameters, [or] variables of each ETN correlated different index." (*Id.* at 4.) It also alleges that they suffered significant investment losses when UBS announced mandatory redemption and delisted all its ETNs in March 2020. (*Id.* at 3.) Plaintiffs have not explained or alleged how these acts occurred "within Texas"; nor do they allege that Defendants sold or directly marketed the ETNs to Texas residents. There are no allegations to show that Defendants purposefully directed or aimed any

7

activities at Texas related to this action or otherwise. *See Panda Brandywine Corp.*, 253 F.3d at 869 (explaining that courts are not required "to credit conclusory allegations, even if uncontroverted"). Plaintiffs have failed to make a prima facie showing of specific jurisdiction against Defendants. *See Burger King Corp.*, 471 U.S. at 472; *Alpine View Co. Ltd.*, 205 F.3d at 215.[5]

Because Plaintiffs failed to meet their burden, Defendants' motion to dismiss for lack of personal jurisdiction should be granted.

### III.  RECOMMENDATION

Defendants' motion to dismiss for lack of personal jurisdiction should be **GRANTED**. All of Plaintiffs' claims against Defendants should be **DISMISSED without prejudice** for lack of personal jurisdiction.[6]

**SO RECOMMENDED** on this 28th day of September, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5] Because Defendants do not have the requisite minimum contacts with Texas, it is unnecessary to consider whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. *See Southern Copper, Inc. v. Specialloy, Inc.*, No. 00-50408, 2000 WL 1910176, at *4 (5th Cir. Dec. 22, 2000) (per curiam); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 329 n. 20 (5th Cir. 1996).

[6] Because Defendants' motion should be granted for lack of personal jurisdiction, it is unnecessary to reach their alternative grounds for dismissal under Rule 12(b)(6) for failure to state a claim. (*See* doc. 10 at 15-18.)

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE